**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PELLEGRINO FOOD PRODUCTS COMPANY, INC., | : : : | CIVIL ACTION |
| | : | No. _____14-193 Erie_____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EAT GOOD DO GOOD LLC t/a TADAH FOODS, JOHN SORIAL and | : : | |
| DAVID HABASHY | : | JURY TRIAL DEMANDED |
| Defendants. | | |

**VERIFIED COMPLAINT**

Plaintiff Pellegrino Food Products Company, Inc. ("Pellegrino Food"), by its

undersigned attorneys, avers as follows:

**NATURE OF ACTION**

1.      Pellegrino Food commences this action against defendants Eat Good Do Good

LLC t/a Tadah Foods ("Tadah"), John Sorial ("Sorial") and David Habashy ("Habashy")

(collectively hereinafter "Defendants") for (a) preliminary and permanent injunctive relief,

compensatory damages, disgorgement of profits, punitive damages, attorneys' fees and costs for

violations of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"); (b) preliminary and

permanent injunctive relief, compensatory damages, attorneys' fees and costs for breach of

contract; (c) preliminary and permanent injunctive relief, compensatory damages, disgorgement

of profits, punitive damages and costs for unfair competition; and (d) compensatory damages and

costs for unjust enrichment.

## THE PARTIES

2.     Plaintiff Pellegrino Food is a Pennsylvania corporation with its principal place of business at 100 Lookout Street, Warren Pennsylvania 16365.  Pellegrino Food is a citizen of the Commonwealth of Pennsylvania.

3.     Tadah is Virginia limited liability company with its principal place of business at 4031 University Drive # 200, Fairfax, Virginia 22030.  Eat Good Do Good is a citizen of the Commonwealth of Virginia.

4.     Defendant Sorial is citizen of the Commonwealth of Virginia residing at 6020 Katelyn Court, Alexandria, Virginia 22310.  Sorial is a managing member or member of Tadah and/or an agent authorized to act on Tadah's behalf.

5.     Defendant Habashy is a citizen of the Commonwealth of Virginia residing at 4206 Upper Park Drive, Fairfax, Virginia 22030.  Habashy is a managing member or member of Tadah and/or is an agent authorized to act on Tadah's behalf.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between plaintiff Pellegrino Food and defendants Tadah, Sorial and Habashy, and the amount in controversy exceeds $75,000, exclusive of costs.

7.     This Court has personal jurisdiction over Tadah, Sorial, and Habashy pursuant to the Pennsylvania Long Arm Statute, 42 Pa. C.S.A. § 5322, because Defendants have (a) transacted business in this Commonwealth by virtue of their contracting with Pellegrino Food through a series of related acts for the purpose of obtaining a pecuniary benefit and/or accomplishing its business objectives, (b) visited Pellegrino Food's plant in Warren,

Pennsylvania on numerous occasions, (c) shipped merchandise directly and/or indirectly into this Commonwealth, (d) contracted to supply services and/or things in this Commonwealth, and (e) caused harm or tortious injury in this Commonwealth by acts and/or omissions.

8.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Pellegrino Food's claims arose here.

## FACTUAL BACKGROUND

9.      Pellegrino Food is a family-owned and operated business that has been in existence since 1946.  Pellegrino Food operates a food manufacturing plant in the City of Warren, Warren County, Pennsylvania.  Pellegrino Food is a United States Food and Drug Administration ("FDA") and United States Department of Agriculture ("USDA") approved company with a 50,000 square foot food manufacturing, processing and baking facility, with a specialty in developing and manufacturing enrobed food products.

10.      Throughout its long history, Pellegrino Food has created, developed, and honed proprietary food manufacturing processes, methods, techniques, and know-how that enable Pellegrino Food to manufacture quality food products in an efficient and cost effective manner.  Pellegrino Food has expended countless, time, energy, and resources in developing these confidential, proprietary, and trade secret processes, methods, and techniques.

11.      One of Pellegrino Food's specialties concerns the manufacturing of enrobed food products, such as calzones, strombolis, meat pies, fruit pies, chicken pot pies and pepperoni balls. To process quality enrobed food products in a cost effective manner, Pellegrino Food utilizes, among other things, Rheon technology.  Pellegrino Food is one of the foremost Rheon technology exponents in the country.

12.     Pellegrino Food's confidential, proprietary, and trade secret processes, methods, and techniques are not generally known in the food manufacturing industry and provide Pellegrino Food with a competitive advantage over other companies.  Other companies that need products manufactured contract with Pellegrino Food to take advantage of Pellegrino Food's expertise, know-how, and facilities.

13.     Pellegrino Food safeguards the confidentiality of its processes, methods, processes, and techniques by distributing the information on a limited basis within its company; requiring employees, business partners, and visitors to maintain confidentiality; limiting access to its plant floor; forbidding photography inside its plant, and specifically labeling documents as "confidential" and "trade secrets," among other things.

14.     Pellegrino Food's confidential, proprietary, and trade secret methods, processes, techniques cannot be easily replicated by its competitors or others seeking to enter the food manufacturing industry.

15.     Tadah is a small, start-up company founded by Sorial on or about March 16, 2010.

16.     Upon information and belief, Sorial formed Tadah to manufacture and sell falafel wraps on a relatively small scale.

17.     Prior to commencing its business relationship with Pellegrino Food, Tadah manufactured and packaged its falafel wraps by hand and distributed them for sale on a limited basis.  On its own, Tadah does not have the capital equipment, expertise, experience or training necessary to mass manufacture and distribute its falafel wraps.

18.     Tadah recognized that to grow its business and increase its revenues quickly, it would need to make substantial investments in renting or buying manufacturing facilities,

obtaining capital equipment, and hiring experienced food manufacturing managers and employees.  Alternatively, Tadah could enter into a business relationship with a food manufacturer that already possesses the facilities, capital equipment, and expertise to allow Tadah to produce its products on a large scale and to increase its distribution network.

19.     Tadah decided to grow its business by entering into a relationship with an experienced food manufacturer.  Upon information and belief, Tadah made the decision to enter into a relationship with an experienced food manufacturer to save the substantial expense and uncertainty associated with growing its business organically.

20.     In or around April 2010, Sorial contacted Pellegrino Food about manufacturing its falafel wraps on a mass basis.  Sorial represented to Pellegrino Food that Tadah had received interest from regional and national food retailers for its frozen falafel wrap, but that it lacked the operational capacity and know-how to mass produce the frozen falafel wraps as needed.

21.     Sorial stated that Tadah was interested in partnering with Pellegrino Food for the manufacturing, sales and promotion of its frozen falafel wraps on a mass scale.  Specifically, Sorial represented that Pellegrino Food would provide the food manufacturing techniques and know-how and Tadah would provide basic recipes, sales and marketing expertise.  Sorial also represented that the opportunity existed for Pellegrino Food to partner with Tadah on other projects.  In seeking to enter into this relationship with Pellegrino Food, Tadah sought to gain the benefit of Pellegrino Food's proprietary processes, methods, techniques and know-how and to utilize the facilities and capital equipment, all of which Pellegrino Food has gradually acquired over its 68-year existence.

22.     Pellegrino Food was interested in partnering with Tadah, but only upon terms, conditions, and pricing acceptable to Pellegrino Food.

13921092v.3

23.     Before commencing development of the processes, methods and techniques necessary to automate the production of Tadah's falafel wrap, Pellegrino Food required Sorial and Habashy to sign Pellegrino Food's Visitor's Agreement concerning Confidential and Technical Information (the "Confidentiality Agreement").

24.     Sorial and Habashy signed the Confidentiality Agreement on behalf of Tadah and themselves individually.  On several subsequent occasions, Sorial and Habashy re-executed the Confidentiality Agreement on behalf of Tadah and themselves individually.  True and correct copies of the Confidentiality Agreement signed by Sorial and Habashy are collectively attached hereto as Exhibit "A".[1]

25.     Under the Confidentiality Agreement, Tadah, Sorial, and Habashy agreed not to release, publish, reveal or disclose directly or indirectly Pellegrino Food's "Confidential Information" and agreed to limit their use of the Pellegrino Food's Confidential Information as contemplated by the Confidentiality Agreement.  Under the "Confidentiality Agreement," Confidential Information includes but is not limited to "(a) information relating to business methods, formulas, marketing and advertising methods, business plans, pricing policies, financial information for costs or projections, client lists, research and development, and (b) other information, data, and knowledge that has been created by [Pellegrino Food] or which [Pellegrino Food] otherwise [k]eeps in confidence and so informs [Tadah].  Confidential Information includes all analysis, studies, notes, and other documents prepared by a party, whether in hard copy or electrical data format, based in whole or in part on information furnished by [Pellegrino Food]."

---

[1] The first copy of the Confidentiality Agreement signed by Sorial and Habashy are no longer available.  That copy is, however, identical or virtually identical to the attached copies.

26.     From April 2010 through August 2010, Pellegrino Food spent substantial time researching and developing manufacturing processes and corresponding recipe formulations for Tadah's falafel wraps.  Pellegrino Food initially invoiced Tadah for research and development but stopped doing so based on Tadah's representations that it was partnering with Pellegrino Food.  Tadah did not pay Pellegrino Food for any of the hundreds of additional man-hours of research and development time spent by Pellegrino Food.

27.     Sorial provided Pellegrino Food copies of a falafel recipe being used by Tadah, which he represented contained confidential trade secrets of his company and which he requested be protected by a non-disclosure agreement. However, the recipe ingredients themselves are commonly known and found in publically available recipes for similar products. Sorial also provided sauce recipes to Pellegrino Food.

28.     Upon commencing its research and development, Pellegrino Food discovered that the formulations for the recipes provided by Sorial were not suitable for use with the proprietary processes and methods that Pellegrino Food sought to use in making the falafel patties for the wraps.  Tadah was utilizing consumer kitchen equipment and purchasing ingredients from a grocery store to make its falafel wraps.  Pellegrino Food relied on its experience, expertise, and know-how to develop new formulations that were compatible with the proprietary processes it intended on using for the manufacture of the falafel patties.

29.     In reliance on the Confidentiality Agreement, Pellegrino Food disclosed its confidential, proprietary, and trade secrets information to Tadah, Sorial, and Habashy.  Such disclosures, included, but were not limited to, visits to Pellegrino Food's  plant in Warren, Pennsylvania to observe research and development sessions, falafel test runs conducted by Pellegrino Food employees, and written information.

30.     After investing significant man hours and money to research and development, Pellegrino Food successfully developed a new formulation for the falafel recipe and manufacturing process and a nozzle insert for the mass production of the Tadah falafel wrap. Pellegrino Food made unique adaptations to its equipment and used light sensors for placing of falafel on wraps.  This formulation and manufacturing processes/techniques were unknown to Tadah prior to its entering into a business relationship with Pellegrino Food.

31.     Tadah supplied samples of falafel wraps manufactured by Pellegrino Food to potential customers and obtained orders with a well-known, national retailer

32.     After a successful initial run in Fall of 2010, Tadah continued to use Pellegrino Food to manufacture its falafel wraps as it received new orders.  Moreover, the manufacturing efficiencies and significant costs savings from Pellegrino Food's successful efforts on the falafel wrap project allowed Tadah to rapidly expand its market reach to new geographic regions and larger food retailers, which were not previously available to Tadah.  As a result of its decision to partner with Pellegrino Food, Tadah received substantial economic benefits in the form of increased sales, revenues and profits without having to expend substantial sums on acquiring manufacturing facilities, capital equipment, and trained management and workforce.

33.     From 2010 through 2013, Tadah continued to pay Pellegrino Food to utilize its confidential, proprietary, and trade secrets formulas, methods, processes, and techniques to manufacture falafel wraps. During this time Pellegrino Food continued to refine the new falafel formulations and processes for Tadah as needed.  Further, Pellegrino Food's continuing use of its proprietary processes and methods permitted Tadah to procure and fulfill larger quantity orders more efficiently and for less cost than Defendants' would be able to on their own.  During the course of their ongoing relationship, Pellegrino Food continued to disclose its "Confidential

Information" to Defendants in reliance on the terms and conditions of the Confidentiality Agreement.

34.     In addition to developing proprietary formulas, techniques, methods and processes for the mass production of Tadah's falafel wraps, Pellegrino Food developed a new product known as the "falafel popper" which Pellegrino Food presented to Tadah.

35.     Sorial, who was looking for a new product for Tadah, told Pellegrino Food of his concept for a smaller, appetizer-sized falafel wrap.  In evaluating that product, Pellegrino Food determined that the production costs would be prohibitive because of the need to manually fold the tortilla shells around the falafel filling, which would be even more time consuming than the larger-sized falafel wraps.

36.     Relying on its decades of experience, knowledge of other products, and its unique knowledge of the automated food manufacturing process, Pellegrino Food proposed the "falafel popper" idea, i.e., an appetizer-sized falafel exterior, wrapping a hummus filling.

37.     Pellegrino Food conceived of the falafel popper idea based on its years of experience in the food manufacturer industry and its intimate knowledge of the food-manufacturing processes.  Specifically, Pellegrino Food determined to use "Rheon technology" to vertically extrude a falafel-based mixture as the outer shell of a hummus-filled popper-type product.  Upon information and belief, few, if any, other food manufacturers prior to Pellegrino Food have been able to use a Rheon machine to extrude a vegetable based mixture in the manner being done by Pellegrino Food for the falafel poppers.

38.     To enable the falafel mixture to be used as an outer shell, Pellegrino Food evaluated approximately 400 different starches to ascertain the appropriate starch to adequately bind the falafel and to allow to give it an acceptable taste.

39.     In its in-house machine shop, Pellegrino Food also fabricated a unique, proprietary, confidential, and trade secret nozzle for the Rheon machine and a unique, proprietary, confidential and trade secret spacing ring, which allowed for the vegetable based mixture to be extruded vertically.

40.     Additionally, through its research and development, Pellegrino Food developed other confidential, proprietary and trade secrets concerning the processes, methods and techniques involving mixing the falafel-based substance, line speeds, and cooking temperatures.

41.     Tadah, Sorial, and Habashy learned Pellegrino Food's confidential, proprietary and trade secret methods, processes and techniques by virtue of witnessing Pellegrino Food research and development and production of the falafel poppers and reviewing documents provided by Pellegrino Food.  Upon information and belief, Sorial and/or Habashy took hand-written notes of much of this Confidential Information.

42.     Neither Tadah, Sorial, nor Habashy had the experience, expertise or Rheon technology knowledge to conceive of the falafel popper concept or manufacture it in a commercially acceptable and profitable manner.

43.     Tadah was excited about Pellegrino Food's falafel popper concept and requested that Pellegrino Food manufacture the falafel popper for Tadah to sell.  Pellegrino Food was willing to manufacture the falafel popper for Tadah to market and sell provided that Pellegrino Food received adequate payments for doing so and provided that Tadah, Sorial, and Habashy abided by the terms of the Confidential Agreement.

44.     Pellegrino Food made clear to Tadah that it owned all formulas, processes, methods, and techniques related to the falafel popper.

13921092v.3

45.     Tadah supplied falafel popper samples manufactured by Pellegrino Food to a well-known, national retailer and obtained purchase orders for the product.  Pellegrino Food manufactured the falafel poppers for Tadah to sell for an agreed upon price.

46.     In reliance on the Confidentiality Agreement, its ownership of the confidential, proprietary, and trade secrets information, and the future business that it would be obtaining from Tadah for the sale of falafel poppers, Pellegrino Food spent $84,000 to purchase equipment to bag the falafel poppers in a manner in which Tadah desired market and sell the product. Pellegrino Food also relied on Sorial's assurances that Tadah would procure multiple, high-volume orders of the falafel popper product, which would be manufactured by Pellegrino Food and allow Pellegrino Food to recoup a portion of its capital expenditure from each order of falafel poppers.

47.     In contrast to the frozen falafel wraps, Tadah sold the falafel poppers as a "fresh" product.  Unlike frozen food products, a fresh food product's shelf stability is generally much shorter, and requires more thorough testing and planning in order to, (i) establish accurate sell by dates, (ii) properly store the finished product,  (ii) timely and safely schedule deliveries to stores, (iii) and properly apprise resellers of inventory shelf life.  Tadah was responsible for fulfilling these tasks because it was selling the falafel poppers as a fresh product.

48.     Throughout the process of marketing and selling the falafel poppers, Tadah's actions demonstrated its inexperience with the food industry.  For example, notwithstanding Pellegrino Food's advice, Tadah represented to one of its retailers that falafel poppers were "fresh" after they had been frozen.  Tadah conducted shelf-life tests using common, consumer zip-lock bags rather than the packaging that would actually be used in stores.  Tadah also refused Pellegrino Food's advice relating to labeling the product with consumer safety instructions.

13921092v.3

49.    In refusing to take Pellegrino Food's advice and insisting on taking questionable shortcuts with their initial launch of the falafel poppers, Tadah acted in a manner contrary to industry custom, which demonstrated its lack of experience with manufacturing and selling food products on a large-scale basis.  As a result of such irregularities by Tadah, many of the initial falafel popper deliveries experienced substantial quality control problems, such as being infested with mold upon delivery, or the physical crumbling of the poppers themselves.

50.    Notwithstanding Pellegrino Food's clear and unambiguous ownership of its confidential, proprietary, and trade secret information relating to the falafel wraps and falafel poppers, Tadah unethically began to gather unknown details to prepare to compete unfairly with Pellegrino Food in the manufacture of these products.  Upon information and belief, Tadah sought out other food manufacturers to apply Pellegrino Food's confidential, proprietary, and trade secrets information to manufacture falafel wraps and falafel poppers on a large-scale basis.

51.    Beginning in September of 2013, Sorial began asking Pellegrino Food for specific proprietary trade secret information relating to the process specifications, equipment and formula modifications that Pellegrino Food undertook in its falafel wrap and popper manufacturing. Sorial often asked for this information without explanation, or sometimes state that the information was needed for new laboratory testing or labeling purposes.

52.    Moreover, when  requests for such proprietary information were not forthcoming from Pellegrino Food management, Sorial resorted to directly contacting Pellegrino Food employees under the false pretense that he needed such information to prepare for future client orders that were to be sent to Pellegrino Food.

53.     Sorial eventually admitted that he was asking for this information for a new "cullinist" he had hired to "reformulate" the popper recipe and process developed by Pellegrino Food.

54.     By May of 2014, Sorial's requests for specific trade secret information had become so glaring that Pellegrino Food informed him that they would not provide him with the requested information as they had done in the past.

55.     Upon further investigation, Pellegrino Food discovered that the cullinist that Tadah purportedly hired to look into the molded popper issue, was a retail food consultant that engages in food product research and development services similar to those Pellegrino Food provided for Defendants.  Further, this cullinist's website states that it has close relationships with food manufacturers who directly compete with Pellegrino Food, and one of the services they provide their clients is to develop formulations and processes, which a client can then seamlessly implement with one of their partner food manufacturers.

56.     Upon information and belief, Defendants' have engaged with this cullinist and possibly one of its competing manufacturers, in an effort to misappropriate proprietary information that was disclosed during Pellegrino Food's efforts in designing a manufacturing process for the Defendants' falafel wraps, and Pellegrino Food's creation of the falafel poppers.

57.     Defendants' are aware that these proprietary processes, formulations and know-how are maintained in confidence by Pellegrino Food, that this information is not generally known to the public and is of value to Pellegrino Food because the secrecy of this information from its competitors provides Pellegrino Food with a competitive advantage in the food manufacturing industry, especially in the area of enrobed food products.

58.     In consideration of Pellegrino Food's need for secrecy regarding this information and Defendants' desire to benefit from Pellegrino Food's processes and methods, Tadah, Sorial, and Habashy contractually agreed not to disclose or use any proprietary and confidential information shared with them during the parties relationship without Pellegrino Food's prior written consent.

59.     Pellegrino Food has not provided its written consent for Tadah, Sorial, or Habashy to disclose any of its trade secrets to the cullinist or any other third-party, and to the contrary, advised Defendants that certain information they recently sought were Pellegrino Food trade secrets that must be kept secret and confidential pursuant to the terms of the Pellegrino Food Confidentiality Agreement.

60.     On June 27, 2014, counsel for Pellegrino Food sent Defendants' correspondence informing them of Pellegrino Food's belief that they have, or are likely to, disclose Pellegrino Food trade secrets based on Defendants' recent actions and communications. Further, counsel's letter to Defendants demanded that they cease and desist from disclosure of proprietary Pellegrino Food information, advise Plaintiff's counsel of any documents containing such information still in their possession, and state to what extent they have already disclosed such information to third parties.

61.     Defendants responded by denying Pellegrino Food's ownership of confidential, proprietary and trade secret information.

62.     On the basis of the above facts, Pellegrino Food believes that Defendants have attempted to disclose, or will inevitably disclose, its trade secrets to a competitor of Pellegrino Food.  A substantial threat or sufficient likelihood exists that Tadah, Sorial, and/or Habashy will

disclose Pellegrino Food's confidential, proprietary, and trade secrets information if they manufacture the falafel poppers or falafel wraps with another food manufacturing company.

63.     Upon information and belief, Defendants' have engaged in unfair competition with Plaintiff through their deceptive conduct with Pellegrino Food and its employees in an attempt to gather additional trade secret information from Plaintiff over the last year, while knowingly working with Pellegrino Food's competitors.

64.     Defendants' disclosure and use Pellegrino Food trade secrets is a violation of the terms of their Confidentiality Agreement with Pellegrino Food.

65.     Defendants' unauthorized use and disclosure of Pellegrino Food's confidential, proprietary, and trade secret information will irreparably harm Pellegrino Food.

66.     Defendants will suffer no harm if they are preliminarily and permanently enjoined from using Pellegrino Food's confidential, proprietary, and trade secret information.

67.     The public interest lies in protecting Pellegrino Food's confidential, proprietary, and trade secret information from the unauthorized use and/or disclosure by Defendants.

68.     By unlawfully using and/or disclosing Pellegrino Food's proprietary and confidential information and providing such information to directly competing food consultants and/or its related third-party food manufacturers, Defendants' have been unjustly enriched through increased profits caused by their avoidance of the time and capital that they would otherwise have been forced to expend in developing a manufacturing process and accompanying formulations on their own.

## COUNT I
### Violation of the Pennsylvania Uniform Trade Secrets Act,
### 12 PA. C.S.A. § 5301, et seq.

69.     Pellegrino Food incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

13921092v.3

70.     The proprietary processes, formulations and other information developed by Pellegrino Food and disclosed to Defendants constitutes legally protected trade secrets.

71.     The Confidential Information is not obtainable through independent sources and was procured, collected, arranged and maintained by Pellegrino Food as confidential and proprietary information, as evidenced by the specific and express terms of the Confidentiality Agreement.

72.     The Confidential Information is valuable to Pellegrino Food and of critical importance to the operation and success of its business.

73.     Upon information and belief, Tadah, Sorial and Habashy has or will inevitably disclose the Confidential Information belonging to Pellegrino Food to third party food consultants and other direct competitors of Pellegrino Food, and used and continues to use the Confidential Information for their personal benefit and for the benefit of their company, Tadah.

74.     Notwithstanding being advised by Pellegrino Food about Tadah's, Sorial's and Habashy's obligation to not disclose that information pursuant to the Confidentiality Agreement they signed with Pellegrino Food, Defendants have refused to provide assurances to Pellegrino Food that they will abide by their obligations.

75.     Sorial and Habashy gained access to and knowledge about the Confidential Information while in a position of confidence and trust with Pellegrino Food, and Tadah, and other third parties gained access or will inevitably gain access to the Confidential Information by operation of Sorial and Habashy's improper and unlawful disclosure of it to Tadah and said third parties.  It would be both inequitable and unjust for Sorial, Habashy, and Tadah to be permitted to continue to use and/or disclose the Confidential Information or any portions or parts of it for their benefit and to the detriment of Pellegrino Food.

13921092v.3

76.     By the conduct described herein, Sorial, Habashy and Tadah engaged in and continue to engage in the misappropriation of Pellegrino Food's trade secrets in violation of Pennsylvania common law and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301, et. seq.

77.     As a direct and proximate cause of Sorial's, Habashy's and Tadah's unlawful actions, Pellegrino Food has and will suffer irreparable harm and/or will suffer damages.

78.     Sorial's, Habashy's and Tadah's actions were and are intentional, willful, outrageous and malicious and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Pellegrino Food respectfully requests this Court to enter judgment in its favor and against Tadah, Sorial, and Habashy, granting the following relief:

(a)     Preliminarily and permanently enjoin Defendants from retaining, using, disseminating, or disclosing to any third party, any confidential information, work product, or proprietary information of Pellegrino Food;

(b)     Preliminarily and permanently enjoin Defendants from using for their own purpose, or communicating or disclosing or using for the benefit of any other person, partnership, association, or corporation, any trade secret, work product or other information or knowledge concerning Pellegrino Food's past or present projects or any components related thereto;

(c)     Preliminarily and permanently enjoin Sorial and Habashy, personally, from any direct role in the technical development of any manufacturing processes comparable with Pellegrino Food's proprietary processes, which they observed or learned of while working with Pellegrino Food, and are likely to be inevitably disclosed to food consultants or co-packers that directly compete with Pellegrino Food,

13921092v.3

(d)     Impose a constructive trust on all earnings the Defendants have received or will receive as a result of their misappropriation of Pellegrino Food's trade secrets;

(e)     Order an equitable accounting and the disgorgement of any and all past and future profits obtained by them from any of Pellegrino Food's trade secrets, which is an amount not presently ascertainable but believed to be in excess of $75,000.00

(f)     Order the Defendants to return all originals and copies of all documents, drawings, software, materials, ESI or other property pertaining in any manner to Pellegrino's trade secret information obtained during their engagement of Pellegrino Food and forbid them from regaining access to same from current or former Pellegrino employees;

(g)     Order compensatory damages in an amount to be proven at trial;

(h)     Order punitive damages to the extent permitted by law; and

(i)     Order interest, costs, pre and post-judgment interest, reasonable attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT II
### Breach of Contract

79.     Pellegrino Food incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

80.      The Confidentiality Agreement memorializes the terms of a binding and enforceable contract between Pellegrino Food and Defendants.

81.     Pellegrino Food fulfilled all of its obligations under the Confidentiality Agreement.

82.     Despite the expressed and unambiguous language in the Confidentiality Agreement, Defendants have failed to return documents pertaining to Pellegrino Food's Confidential Information and have used or will inevitably use this Confidential Information

13921092v.3

themselves or providing it third-party competitors of Pellegrino Food for Defendants' benefit.

83.     Pellegrino Food has not provided its written consent to Defendants to disclose or use this Confidential Information.

84.     Defendants admitted attempt to disclose Pellegrino Food's Confidential Information to a consultant and/or third-parties food manufacturers is a material breach of the Confidentiality Agreement.

85.     By openly seeking and providing Confidential Information to the cullinist and/or other food manufacturers for the "reformulation" of the falafel popper product created by Pellegrino Food, Defendants are in breach of Paragraphs 2 and 8 of  the Confidentiality Agreement.

86.     As a direct and proximate result of Defendants' breach of the Confidentiality Agreement, Pellegrino Food has and will continue to suffer irreparable harm and/or significant damages.

87.     Pursuant to Paragraph 13 of the Confidentiality Agreement Defendants are responsible for any and all damages caused by this breach.

88.     Further, Paragraph 10 of the Confidentiality Agreement acknowledges that Pellegrino Food may not have an adequate remedy at law for the material breach or threatened material breach of the covenants contained therein, and may pursue an injunction or other equitable remedy to enjoin a threatened breach.

89.     Pellegrino Food has a legitimate business interest in prohibiting Defendants from using its Confidential Information or disclosing it to third-parties who directly compete with Pellegrino Food in the food industry.

90.     Unless Defendants are enjoined from their likely disclosure of  Pellegrino Food's

Confidential Information, Pellegrino Food will suffer immediate and irreparable harm.

91.     Pellegrino Food has no adequate remedy at law to prohibit Defendants inevitable disclosure of its Confidential Information third-parties who directly compete with Pellegrino Food in the food industry.

92.     WHEREFORE, Plaintiff Pellegrino Food respectfully requests this Court to enter judgment in its favor and against Sorial, Habashy and Tadah, granting the following relief:

(a)     Preliminarily and permanently enjoin Defendants from retaining, using, disseminating, or disclosing to any third party, any confidential information, work product, or proprietary information of Pellegrino Food;

(b)     Preliminarily and permanently enjoin Defendants from using for their own purpose, or communicating or disclosing or using for the benefit of any other person, partnership, association, or corporation, any trade secret, work product or other information or knowledge concerning Pellegrino Food's past or present projects or any components related thereto;

(c)     Preliminarily and permanently enjoin Sorial and Habashy, personally, from any direct role in the technical development of any manufacturing processes comparable with Pellegrino Food's proprietary processes, which they observed or learned of while working with Pellegrino Food, and are likely to be inevitably disclosed to food consultants or co-packers that directly compete with Pellegrino Food,

(d)     Impose a constructive trust on all earnings the Defendants have received or will receive as a result of their misappropriation of Pellegrino Food's trade secrets;

13921092v.3

(e)     Order an equitable accounting and the disgorgement of any and all past and future profits obtained by them from any of Pellegrino Food's trade secrets, which is an amount not presently ascertainable but believed to be in excess of $75,000.00

(f)     Order the Defendants to return all originals and copies of all documents, drawings, software, materials, ESI or other property pertaining in any manner to Pellegrino's trade secret information obtained during their engagement of Pellegrino Food and forbid them from regaining access to same from current or former Pellegrino employees;

(g)     Order compensatory damages in an amount to be proven at trial;

(h)     Order punitive damages to the extent permitted by law; and

(i)     Order interest, costs, pre and post-judgment interest, reasonable attorneys' fees, and such further relief as this Court deems just and proper.

### COUNT III
### Pennsylvania Common Law Unfair Competition

93.     Pellegrino Food incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

94.     Sorial, Habashy and Tadah knew and presently understand that Pellegrino Food is in direct competition with the cullinist and other food manufacturing companies and, in fact, Sorial, Habashy and Tadah engaged the cullinist and other third party companies to compete directly with Pellegrino Food through their unlawful use of and provision of proprietary manufacturing information developed by Pellegrino Food.

95.     Sorial, Habashy and Tadah knew and presently understand the critical nature and importance of maintaining the confidentiality of certain business information including manufacturing processes, formulations and know-how to the success of Pellegrino Food and any business within Pellegrino Food's industry.

-21-

96.     As set forth more fully in the foregoing, by willfully and wrongfully possessing, using and disseminating Pellegrino Food's confidential and proprietary information, including but not limited to the Confidential Information, for their own benefit and to the detriment of Pellegrino Food, Sorial, Habashy and Tadah engaged in an unfair method of competition.

97.     Sorial, Habashy and Tadah's actions were and are intentional, willful, outrageous and malicious, and directly and proximately caused and will continue to cause Pellegrino Food to suffer damages in the form of lost revenues and profits due to loss of the value of Pellegrino Food's secret, proprietary information.

WHEREFORE, Plaintiff Pellegrino Food respectfully requests this Court to enter judgment in its favor and against Sorial, Habashy and Tadah, granting the following relief:

(a)     Preliminarily and permanently enjoin Defendants from retaining, using, disseminating, or disclosing to any third party, any confidential information, work product, or proprietary information of Pellegrino Food;

(b)     Preliminarily and permanently enjoin Defendants from using for their own purpose, or communicating or disclosing or using for the benefit of any other person, partnership, association, or corporation, any trade secret, work product or other information or knowledge concerning Pellegrino Food's past or present projects or any components related thereto;

(c)     Preliminarily and permanently enjoin Sorial and Habashy, personally, from any direct role in the technical development of any manufacturing processes comparable with Pellegrino Food's proprietary processes, which they observed or learned of while working with Pellegrino Food, and are likely to be inevitably disclosed to food consultants or co-packers that directly compete with Pellegrino Food,

13921092v.3

(d)    Impose a constructive trust on all earnings the Defendants have received or will receive as a result of their misappropriation of Pellegrino Food's trade secrets;

(e)    Order an equitable accounting and the disgorgement of any and all past and future profits obtained by them from any of Pellegrino Food's trade secrets, which is an amount not presently ascertainable but believed to be in excess of $75,000.00

(f)    Order the Defendants to return all originals and copies of all documents, drawings, software, materials, ESI or other property pertaining in any manner to Pellegrino's trade secret information obtained during their engagement of Pellegrino Food and forbid them from regaining access to same from current or former Pellegrino employees;

(g)    Order compensatory damages in an amount to be proven at trial;

(h)    Order punitive damages to the extent permitted by law; and

(i)    Order interest, costs, pre and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT IV
## Unjust Enrichment

98.    Pellegrino Food incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

99.    Sorial, Habashy and Tadah, through their conduct as set forth at length above, have received benefits from Pellegrino Food, including profits and significant manufacturing and research and development cost savings, through their unlawful use of Pellegrino Food's proprietary processes, methods and know-how when engaging competing food consultants and food manufacturers, and which Defendants through their own acts and deeds, knew or should have known would not financially benefit Pellegrino Food.

100.    Defendants will be unjustly enriched through by receiving ill-gotten profits and substantial cost savings that were only made possible due to their use of Pellegrino Food proprietary information, which Defendants only obtained during their engagement with Pellegrino Food, and for which Pellegrino Food will not be compensated.

101.    Pellegrino Food does not have an adequate remedy at law.

102.    Defendants' conduct caused Pellegrino Food to suffer economic damages in a dollar amount that cannot be readily and accurately ascertained at this time.

WHEREFORE, Plaintiff Pellegrino Food  respectfully requests entry of judgment in its favor and against Sorial, Habashy and Tadah, granting the following relief:

(a)     Preliminarily and permanently enjoin Defendants from retaining, using, disseminating, or disclosing to any third party, any confidential information, work product, or proprietary information of Pellegrino Food;

(b)     Preliminarily and permanently enjoin Defendants from using for their own purpose, or communicating or disclosing or using for the benefit of any other person, partnership, association, or corporation, any trade secret, work product or other information or knowledge concerning Pellegrino Food's past or present projects or any components related thereto;

(c)     Preliminarily and permanently enjoin Sorial and Habashy, personally, from any direct role in the technical development of any manufacturing processes comparable with Pellegrino Food's proprietary processes, which they observed or learned of while working with Pellegrino Food, and are likely to be inevitably disclosed to food consultants or co-packers that directly compete with Pellegrino Food,

13921092v.3

        (d)      Impose a constructive trust on all earnings the Defendants have received or will receive as a result of their misappropriation of Pellegrino Food's trade secrets;

        (e)      Order an equitable accounting and the disgorgement of any and all past and future profits obtained by them from any of Pellegrino Food's trade secrets, which is an amount not presently ascertainable but believed to be in excess of $75,000.00

        (f)      Order the Defendants to return all originals and copies of all documents, drawings, software, materials, ESI or other property pertaining in any manner to Pellegrino's trade secret information obtained during their engagement of Pellegrino Food and forbid them from regaining access to same from current or former Pellegrino employees;

        (g)      Order compensatory damages in an amount to be proven at trial;

        (h)      Order punitive damages to the extent permitted by law; and

        (i)      Order interest, costs, pre and post-judgment interest, and such further relief as this Court deems just and proper.

13921092v.3

## JURY DEMAND

Pellegrino Food Products Company, Inc., hereby demands a trial by jury on all claims in the above matter that are so triable.

Respectfully submitted,

WHITE AND WILLIAMS LLP

BY:   /s/ Thomas B. Fiddler
      Thomas B. Fiddler
      PA 59123
      Primitivo J. Cruz (pro hac vice pending)
      PA 314415
      1650 Market Street
      One Liberty Place, Suite 1800
      Philadelphia, PA  19103-7395
      Phone: 215.864.7081/7174
      fiddlert@whiteandwilliams.com
      cruzp@whiteandwilliams.com
      Attorneys for Plaintiff
      Pellegrino Food Products
      Company, Inc.

Dated:  July 14, 2014

13921092v.3

## VERIFICATION

I, Thomas Pellegrino, do hereby verify that I am the President of Pellegrino Food

Products Company, Inc. and am authorized to make this Verification and that that the facts

contained in the foregoing Verified Complaint are true and correct to the best of my knowledge,

information and belief.  I understand that this Verification is made subject to the penalties of 28

U.S.C. § 1746 relating to unsworn falsification to authorities.


Dated:  July 14, 2014

Thomas Pellegrino

13921092v.3