**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Pellegrino Food Products Co., Inc. | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-193-JFM (Erie) |
| | ) | |
| Eat Good Do Good, LLC t/a Tadah | ) | |
| Foods, John Sorial and David Habashy | ) | |
|     Defendant. | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA OR STAY AND FOR EXPEDITED CONSIDERATION

Defendants Eat Good Do Good, LLC[1], d/b/a TaDah! Foods and its principals, John Sorial and David Habashy, (collectively "TaDah"), by and through undersigned counsel, move pursuant to the first-to-file doctrine and 28 U.S.C. § 1404(a) to have this action either stayed or transferred to the U.S. District Court for the Eastern District of Virginia ("E.D.Va.") in light of the pendency of a prior-filed action there arising from the same facts and circumstances. So that proceedings may move forward on an expedited basis in the E.D.Va. without the threat of parallel and duplicative proceedings in this Court, TaDah requests expedited consideration of this Motion.

## INTRODUCTION

This lawsuit is a business dispute between TaDah, a Fairfax, Virginia-based rapidly-growing specialty food company specializing in Mediterranean-style falafel food products and similar creations, and Pellegrino Food Products Co., Inc. ("Pellegrino"), a large contract food production facility located in Warren, Pennsylvania. When TaDah decided to terminate its contractual relationship with Pellegrino and move its business to a different contract food

---

[1] Eat Good Do Good, LLC is so named because the company donates 20% of all of its profits to charities, including both overseas organizations helping children in Zambia, and a local charity offering free medical care for the D.C. area's uninsured.  (Decl. of John Sorial ("Sorial Decl.") at ¶ 2, attached as Ex. 1))

production facility earlier this year, Pellegrino attempted to disrupt TaDah's plans by making unfounded threats that Pellegrino owns TaDah's intellectual property and that TaDah was misappropriating unspecified trades secrets of Pellegrino. Pellegrino's contentions are directly contrary to the Confidential Disclosure Agreement Pellegrino signed at the outset of the parties' relationship in which Pellegrino agreed to protect, not disclose, and return to TaDah, confidential information at the conclusion of the parties' relationship. (Sorial Decl. at ¶ 6 and Ex. A thereto.) So as to allow TaDah to continue to operate its growing business and serve its customers in various locations throughout the United States, TaDah brought suit for injunctive and declaratory relief in E.D.Va., where TaDah is located, seeking declarations to allow TaDah to continue to manufacture its products, and seeking an injunction to secure the return of its intellectual property. *See Eat Good Do Good, LLC v. Pellegrino Food Products Co*., (the "Virginia Action") No. 14-cv-803 (E.D. Va.) O'Grady, D.J.) (Complaint attached as Ex. 2).

Three days after receiving a copy of the Virginia Complaint and a request to waive service, counsel for Pellegrino initiated this action in Erie, Pennsylvania (the "Pennsylvania Action"), filing a complaint and motion for preliminary injunction. The two cases are almost identical in their allegations and essential claims. Plaintiffs in each of these cases seek injunctive relief, and the ability to continue producing TaDah's foods.

There was no good reason for Pellegrino to bring this separate action rather than assert its claims as compulsory counterclaims in the Virginia Action. The E.D.Va. is well known as the fastest federal district court in the United States, thus it cannot seriously be contended that litigating there would preclude Pellegrino from getting any speedy relief it seeks. Likewise, the Alexandria, Virginia courthouse is actually much closer to the offices of counsel for *Pellegrino*, which are located in Philadelphia, making that a more convenient forum for *all* counsel. Yet

initiating a competing action in a distant court in Erie clearly prejudices and inconveniences the much smaller party here, TaDah, by requiring it to litigate far away from TaDah's Fairfax home, where TaDah's witnesses and documents are located. When parallel litigation is pending in different districts, the later-filed action should be stayed absent extraordinary circumstances, or transferred if the parties and the issues are substantially similar.  Such is the case here.

## BACKGROUND

I.      **The Parties' Business Relationship and Activities in Virginia.**

In 2010, TaDah was a start-up packaged food company looking to scale up production of its market-entry product, falafel wraps.  (Sorial Decl. ¶ 1).  TaDah's founder, John Sorial, learned of a contract food production facility through an internet search, Pellegrino, that specialized in Italian-themed food, but appeared to have the capacity to produce TaDah's falafel wraps, with instruction by Sorial on TaDah's unique products.  (*Id.*at ¶ 4).  TaDah entered into a contractual relationship with Pellegrino, under which Pellegrino would manufacture and package TaDah's falafel wrap products for sale, with ingredients sourced and supplied by TaDah. (Virginia Compl. ¶¶ 8, 11).  Pellegrino charged TaDah a per unit fee for the manufacture of its wraps, using TaDah's ingredients and formulations. (Virginia Compl. ¶ 11; Sorial Decl. ¶ 5).

Pellegrino did not handle distribution of TaDah's products. (Sorial Decl. ¶ 7).   Sorial, TaDah's principal, managed all supply chain logistics of the product once it exited Pellegrino's packing line. (*Id.*).   Throughout the course of the parties' relationship, Sorial handled the coordination of shipping product from Pellegrino's facilities to a leased storage facility where the falafel products would be distributed across multiple states for retail sale, for example in Whole Foods throughout the mid-Atlantic region and in other retail establishments.  (*Id.* ¶ 8).  Sorial conducted most, if not all of the logistics management from TaDah's Virginia office in Fairfax.

3

(*Id. ¶* 7).

Sorial developed all recipes for the falafel wrap at TaDah's offices in Virginia.  (*Id.* ¶ 9). Sorial later conceived and developed a new product, falafel poppers, from TaDah's Virginia office, and with the assistance of a third-party professional with no connection to Pellegrino who was engaged by TaDah.  (*Id.* ¶ 10).[2]  From its Virginia offices, TaDah formulated recipes to be conducive for scaled manufacturing on Pellegrino's manufacturing line, and developed all of the packaging design for TaDah's food products in Virginia.  (*Id.* ¶ 11).   Sorial also met with ingredient suppliers, supplying ingredients for falafel wrap and falafel popper production, in Virginia.  (*Id.* ¶ 12).  In order to communicate distribution management, recipe formulations, packaging design, management of ingredient supplies, and other necessary information Sorial communicated regularly, if not daily, through email and phone conversation with Pellegrino, from TaDah's Virginia offices.  (*Id.* ¶ 13).

Earlier this year, TaDah notified Pellegrino that it was terminating their contractual relationship and TaDah was moving to a different production facility.  (*Id*. ¶ 14).  In recent months, Tadah started producing at a new facility.  On June 27, 2014, TaDah received a letter from Pellegrino's counsel asserting Pellegrino's ownership of "confidential, proprietary, and trade secrets information concerning the process, procedures, and techniques relating to the mass manufacturing of falafel wraps."  TaDah was disturbed by this letter, because it mischaracterized the parties' relationship and appeared to be an attempt by a vendor for supply of production services to usurp TaDah's product ideas and recipes.  TaDah engaged counsel, and asked for a short extension to respond to this cease and desist demand.

---

[2]  In this lawsuit, Pellegrino is attempting to claim credit for inventing falafel poppers, but that claim is demonstrably false – this was a creation of TaDah conceived by TaDah's John Sorial, and remains TaDah's intellectual property.  This dispute is at the heart of TaDah's need for injunctive and declaratory relief, to stop Pellegrino from attempting to misappropriate the rights to this product.

TaDah's counsel responded to Pellegrino's letter as promised on the agreed extended deadline, July 9, 2014, and *before* initiating litigation late on the following day, July 10, 2014. (Ex. 3).  In the closing of his July 9 letter, TaDah's counsel asked to discuss the disputed issues and determine a resolution, but gave no deadlines in which a settlement conversation needed to occur.  Indeed by this date, TaDah's counsel had no reason to believe Pellegrino was interested in a negotiated resolution, because Pellegrino's counsel had already refused to provide details as to what the alleged trade secret information was that Pellegrino claimed, or even to provide copies of the contract documents on which Pellegrino was relying.  (Ex. 4).  Pellegrino's counsel likewise has admitted in writing that he, too, had no faith that settlement discussions would go anywhere, writing to counsel for TaDah on July 11, 2014 that "I am not hopeful that this matter can be amicably resolved," but indicating a willingness to talk nevertheless.  (Ex. 6.) Thus, while TaDah remained open to talking either before or after litigation was commenced, TaDah made no assurances that it would hold off in seeking court intervention, which it needed to do quickly to clarify that it could continue operating its business.   For Pellegrino's part, it likewise confirmed that settlement was unlikely and indeed never put forth any settlement proposals, but merely indicated a willingness to have a dialogue that was not conditioned one way or the other on the initiation of litigation.

## II.     The Virginia Complaint Was the First-Filed Case.

As noted above, on the afternoon of July 10, 2014, TaDah filed the Virginia Complaint. The next day, after receiving the file-stamped copy from local counsel in Virginia, TaDah's primary counsel emailed it to counsel for Pellegrino and asked that he agree to waive service. (Ex. 5).  That email expressed a willingness to continue discussions during the pendency of the lawsuit and proposed that the parties talk on the following business day.  (*Id.*).

Pellegrino's counsel did not do so.  Instead of calling to have any discussions about either a negotiated resolution or getting the matter set for hearing quickly in E.D.Va., Pellegrino initiated its own separate lawsuit here on July 14, 2014.  Because Pellegrino's Pennsylvania Action was filed four days after TaDah's Virginia Action, it is of course the second-filed action.

### III.   The Substantive Issues in the Virginia and Pennsylvania Actions Are Nearly Identical.

This case is virtually identical to the Virginia Action.  Both cases are styled as complaints seeking injunctive relief, although the Virginia Action seeks declaratory relief as well.  Both name the opposing party as defendants, although the Pennsylvania Action joins two principals as TaDah as co-defendants.  Both allege that TaDah and Pellegrino each have exclusive rights to and own all confidential, proprietary and trade secret rights related to the formulation and manufacturing of TaDah's falafel wraps and falafel poppers.   (Virginia Compl. ¶ 19-20, Pennsylvania Compl. ¶ 50.)  Thus there can be no serious dispute that these actions concern the same transaction and occurrence, with identical real parties in interest.

### ARGUMENT

### I.   THE COURT SHOULD STAY OR TRANSFER THIS CASE PURSUANT TO THE FIRST-FILED RULE.

The Virginia Action is a previously-filed parallel action and is nearly identical to this case.  The Third Circuit has long recognized that, with limited exceptions, comity requires a court in which a later filed action is pending to decline to hear it during the pendency of the first-filed action.  *See, e.g.*, *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929) (3d Cir. 1941) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."); *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1998).   This is known as the first-filed rule, and is a "doctrine of federal comity."  *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F.Supp.2d 404, 407 (E.D. Pa. 2008).

A.  **Legal Standard Governing First-Filed Rule.**

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (11th Cir. 2012).  The rule is intended "to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments."  *Univ. of Pa.*, 850 F.2d at 977.

The court considers three factors in determining whether to dismiss, stay, or transfer under the first-filed rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  *N. Am. Commc'ns, Inc. v. Homeowners Loan Corp.*, No. CIVA 3;2006-147, 2007 WL 184776, at *2 (W.D. Pa. Jan. 22, 2007) (citing *Univ. of Pa.*, 850 F.2d at 977 (3d Cir. 1998)).  Where, as here, each of these factors is present, the second-filed action should be stayed or transferred.  *See, e.g.*, *Supreme Intern. Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 608 (S.D. Fla. 1997) (stay); *Keating Fibre Int'l, Inc. v. Weyerhaeser Co.*, 416 F.Supp.2d 1048 (E.D. Pa. 2006) (transferred).  "Courts must be presented with *exceptional* circumstances before exercising their discretion to depart from the first-filed rule."  *Univ. of Pa.*, 850 F.2d at 979 (3d Cir. 1998) (emphasis added).  Absent exceptional circumstances, the court having jurisdiction over the second-filed action will defer to the forum of the first-filed suit.  *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F.Supp.2d 613, 622 (W.D. Pa. 2009).

B.      **The Virginia Action Was the First Filed.**

There is no question that this case is the second-filed action.  The Virginia Action was filed on July 10, 2014 in the Eastern District of Virginia.  The Pennsylvania Action was filed on July 14, 2014.

C.  **The Parties in Interest Are the Same.**

The second factor, similarity of parties, also favors transfer or stay.  Both TaDah and

Pellegrino are parties in the Virginia Action and the Pennsylvania Action.   Although the Pennsylvania Action also names John Sorial and David Habashy, the managing members of TaDah, as parties to the action, a "precise identity of the parties is not required" under the first to file doctrine.  *Rudolph & Me, Inc. v. Ornament Cent., LLC.*, 2011 U.S. Dist. LEXIS 100430, at *5 (M.D. Fla.).   "The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute."  *Advanta Corp. v. Visa U.S.A., Inc.*, No.96-7940, 1997 WL 8896189, at *3 (E.D. Pa. 1997); *see also Kerotest Mfg. v. C-O-Two Fire Equip. Co.*, F.2d 31 (3d Cir. 1951) (stating the first to file rule applies when subsequently filed action includes additional parties).  Given that Sorial and Habashy are named only in their capacities as principals of TaDah, the first-filed doctrine applies with full force.  *Id.*

### D.    The Cases Present Substantially Identical Issues.

The third factor, similarity of the issues, likewise favors application of the first-filed rule. The key inquiry is whether the two cases have "overlapping" issues.  *DHL Exp. (USA), Inc. v. Unishippers Global Logistics, LLC,* No. 08-62072-CIV, 2009 WL 2843250, at *1 (S.D. Fla. Aug. 27, 2009).   "[S]light differences in the claims asserted do not prevent application of the rule where the underlying complained-of product is almost identical."  *Walker v. Progressive Cas. Ins. Co.*, No. C03-656R, 2003 WL 21056704, at *3 (W.D. Wash. May 9, 2003).   When, as here, the key dispute in the two actions is so similar, dismissal, stay, or transfer of the second case is appropriate. *Id.*; *In re Checking Account Overdraft Litigation*, 859 F. Supp. 2d at 1325; *Rudolph & Me, Inc.*, 2011 U.S. Dist. LEXIS 100430, at *6.

Both the Virginia Action and the Pennsylvania Action raise the same core issue – whether TaDah or Pellegrino possesses exclusive rights to and owns confidential, proprietary and trade secret rights related to the formulation and manufacturing of TaDah's falafel wraps and

falafel poppers.  The differences in the causes of action under Virginia and Pennsylvania law do not change the analysis.  "The factors need not be identical but should reflect 'substantial overlap between the two suits.'"  *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F.Supp.2d 613, 621 (W.D. Pa. 2009) (citing *Davis v. Hartford Ins. Co.*, No. 09-5852, 2009 WL 3347090, at *1 (E.D. La. 2009)).  In both suits, plaintiffs allege that each developed and created the proprietary methods of producing falafel wraps and falafel poppers. (Virginia Compl. ¶ 19-20, Pennsylvania Compl. ¶ 50).  Both suits are also seeking to enjoin defendants from using or asserting ownership of the disputed proprietary information. (Virginia Compl. ¶ 28, Pennsylvania Compl. ¶ 78, 92, 97, 102).

### E.  No Exception To The First Filed Rule Applies.

While "exceptions to the [first-filed] rule are rare," a limited exception does apply when a party acts in bad faith by initiating the first filed suit.  *EEOC v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1998).  In another paper filed with this Court, Pellegrino charges that TaDah acted in bad faith by initiating the Virginia Action.  That contention is unwarranted and unfair.

The Third Circuit has found evidence of bad faith when one party in a settlement negotiation provides a deadline for litigation if settlement negotiations fail and right before deadline approaches, the other party files suit, or when suit is filed in a location different from the filer's home in order to take advantage of favorable law in that jurisdiction. *See, e.g.*, *Univ. of Pa.*, 850 F.2d at 971 (3d Cir. 1998).  When there is no deadline set for suit, or for reaching a settlement agreement, courts have held that a preemptive suit is not filed in bad faith.  *Keating Fibre Int'l, Inc. v. Weyerhaeser Co.*, 416 F.Supp.2d 1048, 1052 (E.D. Pa. 2006) (finding no evidence of bad faith when suit was filed despite on-going settlement discussion between parties because there was no deadline set for suit, despite ongoing settlement discussions); *see also*, *IMS*

*Health, Inc. v. Wality Tech, Inc.*, 59 F.Supp.2d 454, 464 (E.D. Pa 1999) (distinguishing *Univ. of Pa.* where a deadline was established, and "litigation was in the air," where Courts decline to find bad faith). Nor does it matter if a complaint seeks declaratory relief. *IMS Health*, 59 F.Supp.2d at 463 (citations omitted) ("a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere") (citing *Hunt Mfg. Co. v. Fiskars Oy AB*, No. 97-2460, 1997 LEXIS 15457 at *8 (E.D. Pa. 1997)).

TaDah filed the Virginia Action, including claims both for injunctive and declaratory relief, in good faith to receive quick judicial clarification of its right to continue running its ongoing business and fulfill pending orders after being threatened by a terminated vendor. While both sides had indicated a willingness to discuss settlement, they had made no progress in that respect, Pellegrino had no settlement proposal pending, and both parties agreed the chance of a negotiated resolution was unlikely. *See* Ex. 6 (Pellegrino's counsel stating "I am not hopeful that this matter can be amicably resolved."). With no settlement deadlines pending or promises to forbear litigation during negotiations, TaDah's filing suit was not in bad faith. *See Keating*, 416 F. Supp. 2d at 1052 (no bad faith although parties "were engage in discussions" regarding settlement, where "no deadline set" for terminating negotiations and filing suit). Likewise, that Pellegrino had sent a prior cease and desist demand that might have been followed by the filing of a lawsuit at some unspecified future date is an insufficient basis to accuse TaDah of acting in bad faith by filing suit. *Chartis Pro. & Cas. Co. v. Inganamort*, 2012 WL 6626029, at *6 (D.N.J. Dec. 19, 2012) ("the alleged fact that Chartis knew that Plaintiffs intended to file suit in Florida at some unspecified future time does not in and of itself demonstrate bad faith").

Nor is this a case where there was any forum shopping. It is not forum shopping for a party to file a lawsuit in its home forum, which is what TaDah did here. What the Third Circuit

10

has criticized in the first-filed context is a party filing a case in a ***distant*** forum that it believes will be more friendly.  *See Univ. of Pa.*, 850 F.2d 973, 978 (University of Pennsylvania filing suit in Washington, D.C. rather than in Philadelphia to take advantage of more favorable law).  And unlike in *Univ. of Pa.*, the forum selection in this case does not affect the substantive law that will be applied.  *Univ. of Pa.* was a federal question case involving a legal issue that had been decided differently in the Third Circuit and in the D.C. Circuit – on those facts forum selection would likely be outcome determinative.  *Id.* at 978.  Here, in contrast, this is a diversity case.  That means that either this Court or E.D.Va. will need to undertake a choice-of-law analysis to determine which state's law applies, rather than applying the forum law.  There is no reason to contend that the E.D.Va. cannot apply choice-of-law principles fairly to both parties, just as this Court can, to determine which state's law applies here.

**F.   This Court Should Either Stay or Transfer This Action to the Eastern District of Virginia.**

When the criteria for the first filed rule are satisfied, a court in which the second-filed action is pending is to "stay … or transfer a later-filed action."  *Keating Fibre Int'l, Inc. v. Weyerhaeser Co.*, 416 F.Supp.2d 1048, 1051 (E.D. Pa. 2006).  For the reasons noted above, this case presents a classic example of where the first-filed doctrine is applicable and the Court should either stay this action pending resolution of the Virginia Action, or transfer it to E.D.Va. for consolidation with the Virginia Action.

**II.   IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS ACTION TO E.D.Va. PURSUANT TO 28 U.S.C. § 1404(a).**

**A.   28 U.S.C. § 1404(a) Standard for Transfer of Venue.**

In the alternative, this Court may transfer venue under 28 U.S.C. § 1404(a), which provides: "a district court may transfer any civil action to any other district or division where it might have been brought" if it is in the interests of justice and "for the convenience of the parties

and witnesses." 28 U.S.C. § 1404(a).  The goal of § 1404(a) "is to prevent waste of time, energy and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Determining the propriety of transferring venue is a two-step inquiry.  First, this Court must determine whether the action originally could have been brought in the transferee district. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Second, the Court must "consider whether the balance of conveniences and the public interest weigh in favor of transfer." *Keating Fibre Int'l, Inc. v. Weyerhaeser Co.*, 416 F.Supp.2d 1048, 1051 (E.D. Pa. 2006).  In making this determination, the burden is on the moving party, and the court is vested with "broad discretion." *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).

## B. <u>This Action Could Have Been Brought in the Eastern District of Virginia.</u>

The E.D.Va. is a proper venue for this action, and that court has jurisdiction to hear the dispute.  E.D.Va. has subject matter jurisdiction because there is diversity of citizenship, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332. It is undisputed between both parties that there is diversity of citizenship, as TaDah resides in Virginia and Pellegrino resides in Pennsylvania.   Both parties' complaints plead an amount in controversy in excess of $75,000.

Personal jurisdiction over Pellegrino lies in Virginia in light of Virginia's expansive long-arm statute.  *See* Va.Code § 8.01–328.1(A).  "Virginia's long-arm statute is a 'single act statute' meaning that, in Virginia, only one business transaction is required to confer jurisdiction on its courts.  *Citibank, N.A. v. TPI Group, Inc.*, 2014 WL 2579984 (E.D. Va. 2014), *citing I.T. Sales, Inc. v. Dry*, 278 S.E.2d 789, 790 (Va.1981); *see also McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957) (holding a single business transaction is sufficient to confer jurisdiction and satisfy the minimum contacts requirements of due process).   Pellegrino purposefully availed

itself to jurisdiction in Virginia by contracting to do business with Fairfax-based TaDah, accepting payments from TaDah from Virginia, coordinating delivery of supplies and ingredients that Pellegrino needed to manufacture with TaDah in Virginia, and engaging in routine, if not daily conversations over a three year period into TaDah's headquarters in Virginia regarding the formulation and manufacture of TaDah's food products.  (Virginia Compl. ¶ 8, 10, 11; Sorial Decl. ¶ 13).   Under Virginia's long-arm statute, Pellegrino "transact[ed] business in" Virginia, Va. Code § 8.01-328.1, when it had these communications, and accordingly personal jurisdiction in Virginia is proper.  *Peanut Corp. of Am. V. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982) (contract modification sufficient for personal jurisdiction when "addressed to and received by IMA in Virginia, telephonic negotiations occurred with one of the participants located in Virginia, and numerous written communiques between the parties were sent to and received in Virginia"); *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990) (personal jurisdiction over California defendant who contracted with a Virginia attorney although Californian performed all services in California based on written and telephonic communications between California and Virginia and the exchange of signature pages on a contract between the two states).[3]

Venue is proper in the E.D.Va. because it is a district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial amount of the property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2).  The "events or omissions"

---

[3]   The Virginia court also has personal jurisdiction over Pellegrino, pursuant to Va. Code § 8.01-328.1 and in light of Pellegrino's tortious misappropriation of TaDah's trade secrets, given Pellegrino's website, accessible throughout Virginia, which solicits business nationally and advertises that Pellegrino "services **national** customers and is continuously pursuing new products, new customers and new marketing concepts".   *See* www.pellegrinofoods.com (emphasis added); *see Baker v. Petterson Med. Supply, Inc.*, 2011 WL 7153948, at *5 (E.D. Va. Nov. 17, 2011) ("It is well settled in this judicial district that a defendant who operates a minimally interactive website and advertises products without geographic restriction and is accessible from Virginia, satisfies the 'regularly solicits business' element of subsection (a)(4)."); *Graduate Mgmt. Admission Council v. Raju*, 214 F. Supp. 2d 589, 593 (E.D. Va. 2003).

concern business transactions that occurred between TaDah and Pellegrino to manufacture falafel wraps and falafel poppers.  Venue is also proper in the E.D.Va. because a "substantial amount of …property" is located in Virginia in the form of all confidential, proprietary and trade secret rights related to the formulation and manufacturing of falafel wraps and falafel poppers. Given personal jurisdiction under the Virginia long-arm statute is satisfied and venue is proper, the first prerequisite for transfer under § 1404(a) is satisfied.

### C.   Transfer Is In The Interests of Convenience and Justice.

The Third Circuit has enumerated factors that a district court should consider in determining "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *IMS Health, Inc. v. Wality Tech, Inc.*, 59 F.Supp.2d 454, 468 (E.D. Pa 1999) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995) (citations omitted)).   Relevant factors in this case include: (1) the plaintiff's choice of forum; (2) defendant's preference; (3) convenience to the parties as indicated by their relative physical and financial condition; (4) convenience to the witnesses; (5) location of books and records; (6) practical considerations that could make the trial easier, more expeditious, or less expensive; (7) where the claim arose and (8) familiarity of the trial judge with the applicable state law in diversity cases. *IMS Health*, 59 F.Supp.2d at 468-469 (E.D. Pa 1999).

With the exception of factor one (plaintiff's choice of forum), all of the factors are either neutral or heavily favor transfer of this action to Virginia.  Significantly, the convenience factors, including (2)-(6), are either neutral or weigh in favor of transfer.  The defendant in this action, TaDah has locational preference of being located in Virginia, given the location of its business. It would be substantially burdensome for defendants to litigate in Erie, Pennsylvania given travel

costs, and time investments.  Indeed, even Pellegrino's counsel is closer to Alexandria, Va. than

Erie, Pa.  And TaDah's main witnesses and records are all in Virginia.  While Pellegrino surely

has witnesses in Pennsylvania, these factors on balance support transfer.

Practical considerations pertaining to an expedited trial weigh heavily in favor of transfer.

*Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F.Supp.2d 613, 621 (W.D. Pa. 2009) (In

deciding whether to transfer, courts will also consider "promotion of judicial efficiency; the

likelihood of prompt resolution in each forum.").  Judicial efficiency is well known in the

E.D.Va., as that is the fastest federal district court in the Nation.  Transferring to E.D.Va. will

ensure swift resolution of the disputed matters and promote judicial efficiency.  Transfer is

particularly appropriate when one court has not progressed more rapidly than the other court.

*Keating Fibre Int'l, Inc. v. Weyerhaeser Co.*, 416 F.Supp.2d 1048, 1051 (E.D. Pa. 2006) (finding

the cases in both courts had not progress more rapidly than the other, "eliminating any

circumstance that would militate in favor of departing from the 'first-to-file' rule").  Such is the

case here where neither case has experienced significant progression.

"[A] district court possesses a significant degree of discretion in deciding motions to

transfer pursuant to § 1404(a)."  *IMS Health, Inc*, 59 F.Supp.2d 454, 469 (E.D. Pa 1999).  The

Court should grant the motion transfer on the facts present here.

## III.   THIS COURT SHOULD GRANT EXPEDITED CONSIDERATION OF THIS MOTION.

Expedited consideration of this motion is requested so that both parties can gain clarity as

to their legal rights in short order.  TaDah is a young, growing business with orders from national

retailers that it needs to fill; Pellegrino has expressed an interest in seeking preliminary

determinations through a motion for preliminary injunction.

Had Pellegrino not commenced this parallel proceeding in this Court, TaDah already

would have filed a motion for expedited consideration in the E.D.Va. of its request for declaratory relief, given that only limited discovery is necessary in this case and there is a pressing business need for quick determination.   Moreover, based on Pellegrino's refusal to return TaDah's trade secret information, TaDah has additional breach of contract and trade secret claims to bring in an amended complaint, which it will file as soon as venue is resolved. Expedited consideration of this Motion will allow the parties to move forward to get the judicial relief they both seek with haste, which is in the interests of both companies.

## CONCLUSION

For the foregoing reasons, TaDah requests that this Court either stay this action or transfer it to the U.S. District Court for the Eastern District of Virginia, and that it set an expedited schedule for the completion of briefing and consideration of this Motion.

Respectfully submitted,

MORELLA & ASSOCIATES,
A PROFESSIONAL CORPORATION

/s/Christopher E. Ballod_____
Christopher E. Ballod, Esquire

PA ID No. 89462
706 Rochester Road
Pittsburgh, PA  15237
412-369-9696
ceballod@morellalaw.com

16

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PELLEGRINO FOOD PRODUCTS, INC., | ) | NO. 1:14-cv-00193 (JFM) |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EAT GOOD DO GOOD, LLC t/a TADAH FOODS, JOHN SORIAL and DAVID HABASHY | ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this   21st   day of July, 2014, a true and correct copy of the foregoing Motion to Transfer was served utilizing this Court's CM/ECF, electronic email notification system, on the following:

Thomas B. Fiddler, Esquire
White and Williams, LLP
1800 One Liberty Place
Philadelphia, PA  19103
fiddler@whiteandwilliams.com

MORELLA & ASSOCIATES,
A Professional Corporation

By: */s/ Christopher E. Ballod*_____
Christopher  E. Ballod, Esquire
PA ID No. 89462